Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAURIE BURNETT, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1) Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| CONFORMIS, INC., KENNETH FALLON III, MARK AUGUSTI, CARRIE BIENKOWSKI, GARY P. FISCHETTI, PHILIP W. JOHNSTON, and BRAD LANGDALE, | (2) Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Lauri Burnett ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Conformis, Inc. ("Conformis" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Restor3d, Inc. ("Parent"), through merger vehicle Cona Merger Sub Inc.

("Merger Sub", collectively with Parent, "Restor3d") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed merger transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a June 23, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Conformis common stock will be converted into the right to receive $2.27 in cash.

3.     Thereafter, on June 24, 2023, the Company filed a Definitive Proxy Statement on Form DEFM14A (the "Definitive Proxy Statement") with the SEC in support of the Proposed Transaction.

4.     The Proposed Transaction is unfair for a number of reasons.  Significantly, the Definitive Proxy Statement fails to disclose why no committee of independent and disinterested Board members was created to run the sales process.

5.     In violation of the Exchange Act, Defendants caused to be filed the materially deficient Definitive Proxy Statement, preventing Plaintiff from making a fully informed decision on whether to vote in favor of the proposed transaction.  The Definitive Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Definitive Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Conformis, provided by Conformis management to the Board and the Board's financial advisor UBS Securities LLC ("UBS"); (c) the data and inputs underlying the financial valuation analyses, if any, that

purport to support the fairness opinion created by UBS, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of California and, at all times relevant hereto, has been a Conformis stockholder.

8.      Defendant Conformis is a medical technology company that develops, manufactures, and sells patient-specific products and instrumentation.  The Company is incorporated in Delaware and has its principal place of business at 600 Technology Park Drive, Billerica, MA 01821.  Shares of Conformis common stock are traded on the NASDAQ Stock Exchange under the symbol "CFMS".

9.      Defendant Kenneth Fallon III ("Fallon") has been a Director of the Company at all relevant times.  In addition Defendant Fallon serves as the Chair of the Company Board.

10.     Defendant Mark Augusti ("Augusti") has been a director of the Company at all relevant times.  In addition Defendant Augusti serves as the Company's Chief Executive Officer ("CEO").

11.     Defendant Carrie Bienkowski ("Bienkowski") has been a director of the Company at all relevant times.

12.     Defendant Gary P. Fischetti ("Fischetti") has been a director of the Company at all relevant times.

13.     Defendant Philip W. Johnston ("Johnston") has been a director of the Company at all relevant times.

14.    Defendant Brad Langdale ("Langdale") has been a director of the Company at all relevant times.

15.    Defendants identified in ¶¶ 9 - 14 are collectively referred to as the "Individual Defendants."

16.    Non-Party Parent offers surgeons with biomaterials, 3D printing technologies, and artificial intelligence to repair and rebuild the human body.  Parent is a private company based in Durham, North Carolina.

17.    Non-Party Merger Sub is a wholly owned subsidiaries of Parent created to effectuate the Proposed Transaction.

<u>**JURISDICTION AND VENUE**</u>

18.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

19.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this

District; for example, the Company's stock trades on the NASDAQ Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

21.     Conformis is as a medical technology company that develops, manufactures, and sells patient-specific products and instrumentation.

22.     The Company offers personalized knee replacement products, including iUni, iDuo, iTotal CR, and iTotal PS, as well as provides iTotal Identity and Identity Imprint knee replacement products.

23.     The Company also offers Conformis Hip System and Cordera hip replacement, which are hip replacement products; and iJigs, a personalized single-use patient-specific instrumentation.

24.     Conformis markets and sells its products to orthopedic surgeons, hospitals, and other medical facilities through sales force, independent sales representatives, and distributors in the United States, Germany, the United Kingdom, Austria, Ireland, Switzerland, Spain, Portugal, the Netherlands, Belgium, the Dutch Antilles, Suriname, Australia, Brazil, the United Arab Emirates, the Sultanate of Oman, Italy, Poland, and other markets.

25.     The Company's most recent performance press release, revealing performance results preceding the announcement of the Proposed Transaction, indicated impressive clinical success.  For example, in the May 8, 2023 press release announcing its Q1 2023 financial results, the Company saw financial progress, including an increase in revenue from its Conformis hip system of 3% year-over-year.

26.     Speaking on these results in a conference call held on May 8, 2023, Defendant and CEO Augusti stated, "…we saw improving revenue performance within our hip franchise and international markets, increasing demand from patients for our Platinum Services offering and improved gross margin results. And operationally, we reduced OpEx and delivered a higher-than-planned cash balance."

27.     Despite this upward trajectory, the Individual Defendants have caused Conformis to enter into the Proposed Transaction without providing requisite information to Conformis stockholders such as Plaintiff.

***The Flawed Sales Process***

28.     As detailed in the Definitive Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29.     Significantly, the Definitive Proxy Statement also fails to indicate whether a committee of independent directors was created to run the sales process, and if so, the composition and powers of that committee.  On the other hand, if no such committee was created, the Definitive Proxy Statement fails to provide adequate explanation behind such a decision.

30.     Relatedly, while the Definitive Proxy Statement makes note that a "Pricing Committee" was formed during the sales process, the Definitive Proxy Statement fails to provide adequate information for stockholders such as Plaintiff to determine the scope of the Pricing Committee's purview and what powers the Pricing Committee had.

31.     In addition, the Definitive Proxy Statement fails to provide adequate information regarding the departure of former Company Chief Financial Officer Robert Howe during the sales

process, nor his retention as a consultant immediately thereafter, and what impact, if any, such actions had on the sales process and/or the Proposed Transaction.

32.    Moreover, the Definitive Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Restor3d, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Definitive Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33.    It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

34.    On June 22, 2023, Conformis issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**Durham, North Carolina and Billerica, Mass., June 22, 2023 (GLOBE NEWSWIRE) –**

restor3d, Inc. and Conformis, Inc. (NASDAQ: CFMS) announced today that they have entered into a definitive merger agreement under which restor3d, a leading personalized 3D-printed orthopedic company, will acquire all outstanding shares of common stock of Conformis at $2.27 per share in cash, which represents an approximate 96 percent premium to the closing price of Conformis stock on June 22, 2023.

"This combination will create a leading personalized 3D-printed medical device company. Together, we share a common belief in the power of personalization. By leveraging the strengths in our respective portfolios around artificial-intelligence-driven implant design, digital automation, and 3D printed osseointegrative biomaterials, we see tremendous opportunity to offer clinically differentiated and cost-effective solutions across the orthopedic landscape, including shoulder, foot & ankle, spine, and large joints," stated Kurt Jacobus, Chief Executive Officer of restor3d.

"After nearly 20 years of revolutionizing the orthopedic industry with personalized treatment and patient choice, this transaction is a testament to the value of our portfolio and the strength of our core technology and intellectual property," said Mark Augusti, Chief Executive Office at Conformis. "Following a diligent and thoughtful process, the Board has unanimously approved this transaction, which delivers positive benefits to all of our stakeholders. We are excited to enter the next chapter for Conformis with restor3d, which allows us to continue helping patients live productive lives after knee or hip surgery and providing the surgeon community with innovative products and services."

Conformis' Board of Directors, having determined that the transaction is in the best interests of the company's stockholders, has unanimously approved the transaction. The closing of this transaction is expected by the end of Q3 2023 and is subject to approval by Conformis' stockholders and other customary closing conditions.

Advisors

UBS Investment Bank is serving as financial advisor to Conformis, and Hogan Lovells US LLP is serving as its legal counsel. Jones Day is serving as legal counsel to restor3d.

***Potential Conflicts of Interest***

35.    The breakdown of the benefits of the deal indicate that Conformis insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Conformis.

36.    Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  While the Definitive Proxy Statement provides the following it fails to provide the specific amount of Merger Consideration that these shares will be exchanged for.

| Name and Address of beneficial owner | Number of shares beneficially owned | Percentage of shares beneficially owned |
|---|---|---|
| *5% Stockholders* | | |
| Stonepine Capital Management, LLC[1] 919 NW Bond Street, Suite 204 Bend, OR 97703-2767 | 748,194 | 9.5% |
| **Named Executive Officers and Directors** | | |
| Mark A. Augusti[2] | 202,651 | 2.6% |
| Robert S. Howe[3] | 112,569 | 1.4% |
| Denise Pedulla[4] | 2,880 | * |
| Carrie Bienkowski | 19,909 | * |
| Kenneth P. Fallon III[5] | 21,820 | * |
| Gary P. Fischetti[6] | 10,470 | * |
| Philip W. Johnston | 19,273 | * |
| Bradley Langdale[7] | 19,879 | * |
| All current executive officers and directors as a group (8 persons) | 378,347 | 4.8% |

37.     Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows.

| Name | Number of Shares of Restricted Stock and/or RSUs | Total Per Share Cash Consideration ($)[1] |
|---|---|---|
| *Executive Officers:* | | |
| Mark A. Augusti | 98,974 | 224,671 |
| Christine Desrochers | 79,585 | 180,658 |
| Robert S. Howe[2] | 90,984 | 206,534 |
| Denise E. Pedulla | 16,560 | 37,591 |
| *Non-Employee Directors:* | | |
| Carrie Bienkowski | — | — |
| Kenneth P. Fallon III | — | — |
| Gary P. Fischetti | 6,911 | 15,688 |

| Phillip W. Johnston | — | — |
| Bradley Langdale | — | — |

| Name | Number of PSUs (at target) | Total Per Share Cash Consideration ($)[1] |
| --- | --- | --- |
| *Executive Officers:* | | |
| Mark A. Augusti | 17,778 | 40,356 |
| Christine Desrochers | — | — |
| Robert S. Howe[2] | 8,889 | 20,178 |
| Denise E. Pedulla | — | — |
| *Non-Employee Directors:* | | |
| Carrie Bienkowski | — | — |
| Kenneth P. Fallon III | — | — |
| Gary P. Fischetti | — | — |
| Phillip W. Johnston | — | — |
| Bradley Langdale | — | — |

38.    Moreover, certain employment agreements with certain Conformis executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to large payouts, compensation not shared by Plaintiff, as follows.

**Golden Parachute Compensation**

| Named Executive Officers | Cash Payments ($)[1] | Equity Awards ($)[2] | Perquisites/ Benefits ($)[3] | Other ($)[4] | Total ($) |
| --- | --- | --- | --- | --- | --- |
| Mark A. Augusti | 2,473,040 | 265,027 | 52,800 | — | 2,790,867 |
| Robert S. Howe | — | 226,712 | — | — | 226,712 |
| Denise E. Pedulla | 383,250 | 37,591 | 10,272 | 120,000 | 551,113 |

39.    The Definitive Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the

negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Proposed Transaction is not in the best interests of Conformis, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Definitive Proxy Statement***

41.     On July 24, 2023, the Conformis Board caused to be filed with the SEC a materially misleading and incomplete Definitive Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42.     Specifically, the Definitive Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Definitive Proxy Statement fails to disclose:

a.  Whether a committee of independent directors was created to run the sales process, and if so, the composition and powers of that committee. If no such committee was created, the Definitive Proxy Statement fails to provide adequate explanation behind such a decision;

b.  The specific nature and scope of the Pricing Committee's purview of work, as well as the Pricing Committee's powers;

c.  Further information regarding the departure of former Company Chief Financial Officer Robert Howe during the sales process, his retention as a consultant immediately thereafter, and what impact, if any, such actions had on the sales process and/or the Proposed Transaction;

d.  Whether the confidentiality agreements entered into by the Company with Restor3d differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

e.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Restor3d, would fall away; and

f.  Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Conformis Projections*

43.  The Definitive Proxy Statement fails to provide material information concerning financial projections for Conformis provided by Conformis management to the Board and UBS and relied upon by UBS in its analyses.  The Definitive Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

44.  Notably the Definitive Proxy Statement reveals that as part of its analyses, UBS reviewed, "certain internal financial information and other data relating to the business and

financial prospects of the Company that were not publicly available, including financial forecasts and estimates prepared by Conformis management."

45.    The Definitive Proxy Statement should have, but fails to provide, certain information in the projections that Conformis management provided to the Board and UBS.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

46.    With regard to the projections prepared by Conformis management, the Definitive Proxy Statement fails to disclose material line items, including the following:

    a.  Adjusted EBITDA, including the specific inputs, metrics, and assumptions necessary to calculate this metric, including specifically: interest, taxes, depreciation and amortization, and the specific adjustments made to exclude stock based compensation;

    b.  EBITDA, including the specific inputs, metrics, and assumptions necessary to calculate this metric, including specifically: interest, taxes, and depreciation and amortization;

    c.  EBIT, including the specific inputs, metrics, and assumptions necessary to calculate this metric, including specifically: interest and taxes;

    d.  Unlevered Free Cash Flow, including the specific inputs, metrics, and assumptions necessary to calculate this metric, including specifically: after-tax EBIT, depreciation and amortization, capital expenditures, and increase in working capital.

47.     The Definitive Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48.     This information is necessary to provide Plaintiff, in her capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49.     Without accurate projection data for Conformis being presented in the Definitive Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the UBS's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by UBS*

50.     In the Definitive Proxy Statement, UBS describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

51.     With respect to the *Discounted Cash Flow Analysis*, the Definitive Proxy Statement fails to disclose:

      a.  The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 20.00% to 22.00%;

      b.  The estimate of the Company's weighted average cost of capital utilized, and the specific inputs and assumptions used to determine the same;

c.  The terminal value for the Company calculated;

d.  The estimated standalone NTM revenue as of fiscal year-end 2027, and the specific inputs, metrics, and assumptions used to determine the same;

e.  The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rate 3.00%;

f.  The specific inputs, metrics, and assumptions used to determine the utilized terminal multiples of 0.5x to 1.0x;

g.  Regarding the DCF – Capital Raise 2023, sub-analysis, the Definitive Proxy Statement failed to disclose:

  i.  The specific inputs and assumptions used to determine assumed a capital raise in the third quarter of 2023 of $6.6 million (at an assumed share price of $1.15 per share);

h.  Regarding the DCF – Capital Raise Through 2027, sub-analysis, the Definitive Proxy Statement failed to disclose

  i.  The specific inputs and assumptions used to determine the assumption that such 2023 capital raise took place, as well as additional mid-year capital raises throughout the length of the business plan through December 31, 2027, in amounts necessary to fund expected cash usage during the length of the business plan;

  ii.  The specific inputs, metrics, and assumptions used to determine the utilized EV/NTM revenue multiple of 0.75x beginning in 2024;

  iii.  The specific inputs, metrics, and assumptions used to determine the utilized EV/NTM revenue multiple of 1.50x in 2027;

        iv.  The specific inputs, metrics, and assumptions used to determine the utilized 20% discount rate as applied to the 2024 – 2026 and 2027 assumed capital raises.

    i.  The Company's net debt as of June 22, 2023, utilized; and

    j.  The number of Company diluted shares outstanding.

52.    With respect to the *Analysts Price Targets for Conformis*, the Definitive Proxy Statement fails to disclose.

    a.  The specific Analyst stock price targets utilized;

    b.  The specific Wall Street firms and/or analysts which generated the utilized price targets; and

    c.  The specific inputs and assumptions used to determine the utilized discount rate of 21.0%.

53.    With respect to the *Premiums Paid Analysis*, the Definitive Proxy Statement fails to disclose.

    a.  The specific transactions analyzed and the metrics associated observed.

54.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

55.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Conformis

stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

56.    Plaintiff repeats all previous allegations as if set forth in full herein.

57.    Defendants have disseminated the Definitive Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

58.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

59.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any Definitive Proxy Statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make

the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same

meeting or subject matter which has become false or misleading.

60.    The Definitive Proxy Statement was prepared in violation of Section 14(a) because

it is materially misleading in numerous respects and omits material facts, including those set forth

above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that

the Definitive Proxy Statement is materially misleading and omits material facts that are necessary

to render them non-misleading.

61.    The Individual Defendants had actual knowledge or should have known of the

misrepresentations and omissions of material facts set forth herein.

62.    The Individual Defendants were at least negligent in filing a Definitive Proxy

Statement that was materially misleading and/or omitted material facts necessary to make the

Definitive Proxy Statement not misleading.

63.    The misrepresentations and omissions in the Definitive Proxy Statement are

material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her

shares in favor of the Proposed Transaction on the basis of complete information if such

misrepresentations and omissions are not corrected prior to the stockholder vote regarding the

Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**<u>(Against all Individual Defendants)</u>**

64.    Plaintiff repeats all previous allegations as if set forth in full herein.

65.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Definitive Proxy Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

66.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Definitive Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Definitive Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Definitive Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

67.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Conformis's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Definitive Proxy Statement was misleading.

As a result, the Individual Defendants are responsible for the accuracy of the Definitive Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

68.     The Individual Defendants acted as controlling persons of Conformis within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Conformis to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Conformis and all of its employees.  As alleged above, Conformis is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Definitive Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: July 27, 2023

**BRODSKY & SMITH**

By: *Evan J. Smith*

Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*